**IN THE UNITED STATES DISTRICT COURT**
United States Courts
Southern District of Texas
FILED

AUG 18 2025

Nathan Ochsner, Clerk of Court
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

Flavio Milam                                    §
*Plaintiff*                                     §    Case Number: 4:25CV3904
                                                §
                                                §
            vs                                  §
                                                §
                                                §
                                                §    **DEMAND FOR JURY TRIAL**

Christopher Mortellaro
Leigh Allen, individually
and as agent of Rise Association
Management Group, LLC
James Rubin  individually and
agent for Rubin & Rolong PLLC

*Defendant(s)*

## COMPLAINT

This is a civil action from Flavio Milam ("Plaintiff") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code §§ 392.001–392.404, and the Texas Property Code, Tex. Prop. Code §§ 24.005 and 92.0081, arising from the unlawful debt collection and landlord conduct of Defendants Christopher Mortellaro ("Mortellaro"), Leigh Allen ("Allen"), Rise Association Management Group LLC ("Rise"), James Rubin ("Rubin" or "Attorney"), and Rubin & Rolong PLLC, collectively ("Defendants") in connection with the attempted collection of a residential rent debt and interference with Plaintiff's tenancy at 2000 Bagby Street, Unit #13432, Houston, Texas 77002.

### JURISDICTION &VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under federal law.

2. This Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

3. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Harris County, Texas.

## THE PARTIES

4. Plaintiff is an individual residing in Harris County Texas.

5. Defendant Christopher Mortellaro is the owner and landlord of 2000 Bagby Street, Unit #13432, Houston, Texas 77002. He may be served with process at:

> 1155 Nashville Dr.
> Wesley Chapel, FL 33544

6. Defendant Leigh Allen is the General Manager of Rise Association Management Group, LLC. She is sued individually and as an agent of Rise for her direct role in the conduct described herein. She may be served at:

> 2000 Bagby Street
> Houston, Texas 77002.

7. Defendant Rise Association Management Group, LLC is a limited Liability Company and the property management company operating the premises located at 2000 Bagby Street and may be served by servicing its registered agent at:

> Jason Delgado
> 3131 Eastside St, Suite 130
> Houston, TX 77098-1972

8. Defendant James Rubin is a licensed Texas attorney and debt collector who acted on behalf of property owner Christopher Mortellaro in attempting to collect a defaulted rent debt. He may be served at:

> Rubin & Rolong PLLC
> 25814 Budde Road, Suite B-307
> Spring, Texas 77380

9. Defendant Rubin & Rolong PLLC is a Texas professional limited liability company engaged in legal representation and debt collection, including the collection of unpaid rent for landlords. At all relevant times, it acted as the law firm for Christopher Mortellaro in connection with the property at 2000 Bagby Street, Houston, Texas 77002, and may be served at:

> James Rubin
> 2019 Washington Ave Ste 202
> Houston, TX 77007 USA

### FACTUAL ALLEGATIONS

10. Plaintiff was a residential tenant at all times relevant.

11. Plaintiff began residing in the leased unit in 2023, completed two one-year lease terms, and was in the third term when Defendants' conduct abruptly escalated into unlawful activity.

12. On or by July 2025, Plaintiff was unable to pay his rent due to financial hardship. Plaintiff's rent became overdue as of July 3, 2025, placing the account in default.

13. Between July 8 and July 11, 2025, Defendant Mortellaro initiated a barrage of late-night and daytime communications designed to pressure and intimidate Plaintiff into making a rent payment. This included a text message at 12:29 AM on July 8 demanding rent "no later than the 5th" a deadline that had already passed causing immediate anxiety. The same message was sent again via WhatsApp at 12:27 AM the next night. On July 10, Mortellaro escalated contact with a WhatsApp call at 9:07 AM, followed by multiple Text messages from both his personal number (ending in 3069) and the email address cmortell4282@yahoo.com sent to plaintiffs cell phone. At 4:04 PM, Mortellaro sent duplicate Text messages from both the phone and email to plaintiffs cell phone.

14. The next day, at 1:19 PM on July 11, an individual claiming to be Mortellaro's attorney called Plaintiff from a number ending in *1115. During the call, the attorney failed to disclose his identity or provide any written validation of the debt, instead stating:

**Attorney: "it can get bad."**

**Plaintiff: "for me?"**

**Attorney: "well yea."**

15. No FDCPA required disclosures were provided by said attorney. These coordinated, high-pressure communications constituted unlawful harassment under federal and state debt collection laws.

16. This communication violates multiple sections of the Fair Debt Collection Practices Act, including 15 U.S.C. § 1692d (harassment or abuse), § 1692e(5) (threatening action without lawful authority), and § 1692g(a) (failing to provide written notice of debt within five days).

17. Also on Friday, July 11, 2025 at 1:35 PM, immediately after Plaintiff had a brief phone call with the third-party attorney, Defendant Mortellaro sent duplicate follow-up Text messages one from cmortell4282@yahoo.com and one text from his phone number ending in 3069. In both, he invoked the lawyer's involvement, threatened a lawsuit, and stated Plaintiff had "a 3-day vacancy notice and after an eviction suit will follow." These duplicate text messages were sent minutes apart and followed a series of already harassing communications, heightening the pressure and intimidation against Plaintiff.

18. The frequency, timing, and multi-platform nature of these communications especially within business hours and outside of them show a concerted effort to harass, threaten, and coerce payment under the guise of legal enforcement, without proper notices, court oversight, or compliance with federal debt collection laws.

19. Plaintiff replied to the July 11th, text message from Defendant Mortellaro stating:
    **Plaintiff: "I think its best we just go through the eviction process".**

20. Also On July 11, 2025 at 10:32 AM, Plaintiff received an email from Leigh Allen, General Manager of Rise stating that she would enter Plaintiff's apartment at 11:30 AM that same morning to post a notice.

21. The July 11, 2025 email explicitly stated that the entry would occur just 58 minutes later, providing virtually no opportunity for Plaintiff to respond, object, or arrange to be present.

22. The rapid timing and lack of any meaningful notice or opportunity to refuse consent further underscore the coercive and harassing nature of the conduct.

23. The email confirms the entry was made at the landlord's instruction, without a court order, and without Plaintiff's voluntary consent.

24. On July 11, 2025, Defendant Leigh Allen entered Plaintiff's apartment without consent or a court order and posted a 3-day notice on the inside of Plaintiff's door. The notice bore the heading "The State of Texas, County of Harris," creating the false impression that it was issued or authorized by a governmental entity when it was in fact a private landlord demand. (See Exhibit A).

25. Defendant Leigh Allen signed a notice dated July 11, 2025, confirming she posted the 3-day vacate notice on the interior door, another unlawful entry, not permitted under Texas Property Code § 24.005(f) unless specific access conditions are met.

26. On or about July 14, 2025, Defendants re-entered the apartment twice without Plaintiff's consent and left further notices, in violation of Texas Property Code § 92.0081.

27. Specifically, at 11:17 AM, Leigh Allen removed a key to Plaintiff's unit from the KeyLink security system, citing a "vacancy check" at the owner's request.

28. At 1:24 PM the same day, Alonso Garcia removed another key from the KeyLink system and provided it to Leigh Allen. This second entry attempt was unauthorized, unannounced, and continued the harassment.

29. At 1:39 PM, Garcia returned the key, confirming a second unauthorized and unexplained entry was completed.

30. These entries were not for repairs, emergencies, or safety reasons, but were instead coordinated to surveil, intimidate, and build a false pretext for abandonment. Defendants used the guise of a "vacancy check" to justify repeated intrusions.

31. On July 14, 2025, Plaintiff's electronic access fob was intentionally disabled, effectively locking Plaintiff out of the premises without judicial process or lawful authority. This exclusion prevented Plaintiff from entering the secured building and accessing his residence in violation of Texas Property Code § 92.0081.

32. Plaintiff was not provided the 24-hour access to a replacement key required by statute. Instead, Plaintiff was forced to request that the concierge manually allow him entry to reach his unit, further demonstrating the unlawful and coercive nature of the lockout.

33. On July 14, 2025, Plaintiff discovered a notice of abandonment posted inside the apartment, falsely asserting non-payment, absence, and removal of personal belongings.

34. Plaintiff had not abandoned the premises, had not received court ordered eviction, and had communicated with the landlord to start the eviction process.

35. The lease provision allowing peaceful entry to "leave written notices" does not override Texas Property Code. Texas law prevails in conflicts, and any contract clause waiving statutory rights is unenforceable.

36. Additionally, the entry violated Plaintiff's right to quiet enjoyment and was intended to accelerate eviction, bypass due process, and coerce abandonment.

37. These repeated, coordinated intrusions, two on July 14 alone caused Plaintiff significant emotional distress, loss of sleep, and fear of ongoing trespass or property seizure.

38. The actions of Mortellaro, Allen, and agents under their direction rise to the level of harassment, abuse of process, and unauthorized self-help eviction.

39. Plaintiff is a "consumer" as that term is defined under 15 U.S.C. § 1692a(3), having been alleged to owe a personal residential debt for personal, family, or household purposes, and also a "consumer" under Tex. Fin. Code § 392.001(1), being an individual alleged to owe a consumer debt.

40. Defendant Mortellaro is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) because he used interstate communications including text messages, from email addresses and WhatsApp to Text Plaintiffs phone number

to collect rent allegedly in default. His repeated, threatening, and late-night communications were made in connection with the collection of a debt, not mere lease administration. and coordinating the issuance of the deceptive "3-Day Notice to Vacate" that bore the false heading "STATE OF TEXAS, COUNTY OF HARRIS".

41. Here, Defendant Mortellaro's conduct was not mere Landlord, it was a deliberate, repeated campaign to coerce payment or departure using threats, misrepresentation, illegal entries, and public shaming. As such, he meets the statutory definition of a debt collector.

42. Defendant Leigh Allen is a "debt collector" under 15 U.S.C. § 1692a(6) and by Tex. Fin. Code § 392.001(6) because she regularly collects, and in this instance attempted to collect, directly and indirectly a residential rent debt already in default owed to another.

43. Defendant Rise Association Management Group, LLC is a "debt collector" under 15 U.S.C. § 1692a(6) Tex. Fin. Code § 392.001(6) because it regularly collects, and in this instance attempted to collect, a residential rent debt already in default owed to another through its agent or employee, acting on behalf of the property owner and in furtherance of a business the principal purpose of which is the collection of debts.

44. Despite engaging in third-party debt collection activity, Defendant Rise Association Management Group, LLC has not filed the $10,000 surety bond with the Texas Secretary of State as required by Tex. Fin. Code § 392.101 and is therefore prohibited from collecting debts in Texas.

45. Defendants Rubin & Rolong PLLC and attorney James Rubin regularly engage in the collection of consumer debts, including unpaid rent obligations, on behalf of landlords and other creditors. In connection with such collection activities, Defendants issue demand letters, place collection phone calls, and initiate legal proceedings, thereby qualifying as 'debt collectors' within the meaning of 15 U.S.C. § 1692a(6) and the Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001(6).

46. Despite acting in this capacity, Rubin & Rolong PLLC has not filed a third-party debt collector surety bond with the Texas Secretary of State as required by Tex. Fin. Code

§ 392.101 and is therefore prohibited from engaging in any debt collection activity in Texas.

47. Defendants used deceptive means to induce Plaintiff to vacate the premises, all while bypassing lawful eviction procedure. These acts give rise to violations under the FDCPA, TDCA, and state law tort claims.

48. The intimidation, illegal entries, abandonment notice, and denial of key access were not isolated, they reflect a pattern of harassment and unlawful debt collection.

49. Defendants' conduct was willful, malicious, and designed to deprive Plaintiff of housing security, privacy, and due process. These entries alone combined with the mislabeling of notices to suggest state authority support exemplary damages.

50. Plaintiff reserves the right to supplement this section with witness statements, and communications that further demonstrate the Defendants' intent and knowledge.

51. Each Defendant, including Christopher Mortellaro and Leigh Allen and James Rubin is individually liable for their participation and direction of these acts under state and federal law.

## Cause of Action

## COUNT I- VIOLATION OF THE FDCPA  15 U.S.C. § 1692e

52. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53. **15 U.S.C. §1692e(9) and (10) of the FDCPA provides as follows:**

**FALSE OR MISLEADING REPRESENTATIONS**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

**(13) The false representation or implication that documents are legal process.**

**(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.**

54. The deliberate placement of "STATE OF TEXAS" " dated July 11, 2025 by Defendant Leigh Allen, falsely suggested that the notice was government issued or authorized, in violation of 15 U.S.C. § 1692e(9), which prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State."

55. Defendant attorney violated Using state insignia or misleading formatting on a private debt collection notice.

56. Sending WhatsApp/email/text messages at 2 a.m. and pretending to be a neutral party ("it can get bad for you").

## COUNT II- VIOLATION OF OF THE FDCPA   15 U.S.C. § 1692d

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. 15 U.S.C. §1692d(5) and (6) of the FDCPA provides as follows:

**HARASSMENT OR ABUSE**

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.**

**(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.**

59. Multiple Text messages in rapid succession to Plaintiff's phone number, often duplicative and outside reasonable hours.

60. Messages at 12:29 AM, 12:27 AM, 9:07 AM, 9:28 AM, 1:35 PM, back-to-back, from the same person on multiple channels.

## COUNT III- VIOLATION OF OF THE FDCPA   15 U.S.C. § 1692f

61. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

62. 15 U.S.C. §1692f(6) of the FDCPA provides as follows:

**UNFAIR PRACTICES**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—**

**(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;**

**(C) the property is exempt by law from such dispossession or disablement.**

63. Defendants violated 15 U.S.C. § 1692f(6)(A)(C) by intentionally disabling Plaintiff's key fob and preventing access to the leased premises without judicial process or an enforceable right of possession. (See Exhibit B)

64. Defendants had no present right to possession and were not acting pursuant to a court order.

65. The leased premises were Plaintiff's lawful residence and thus exempt by law from such nonjudicial dispossession.

## COUNT IV- VIOLATION OF OF THE FDCPA  15 U.S.C. § 1692j

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

67. **15 U.S.C. §1692j(a) of the FDCPA provides as follows:**

**FURNISHING CERTAIN DECEPTIVE FORMS**

**(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.**

68. Defendants violated 15 U.S.C. § 1692j(a) by designing and furnishing a "3-Day Notice to Vacate" that prominently displayed the heading "STATE OF TEXAS, COUNTY OF HARRIS." This deceptive formatting falsely suggested state or court involvement in the debt collection process, creating the false belief that governmental authorities were participating in the collection of a private rental debt when in fact no such participation existed.

## COUNT V- VIOLATION OF THE TDCA  Tex. Fin. Code § 392.001 et seq.

69. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

70. Tex. Fin. Code § 392.302(2) and (4) states:

**HARASSMENT; ABUSE.**

**In debt collection, a debt collector may not oppress, harass, or abuse a person by:**
**(2) placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number;**
**(4) causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.**

71. Defendants, including Christopher Mortellaro and Leigh Allen and attorney, are "debt collectors" as defined by Tex. Fin. Code § 392.001(6), as they engaged directly and indirectly in the collection of a consumer debt, namely, unpaid residential rent.

72. Defendant (Attorney name) violated Tex. Fin. Code § 392.302(2) by placing at least one phone call to Plaintiff without disclosing the name or identity of the individual making the call, and using language intended to threaten or intimidate the Plaintiff into paying a debt.

73. Defendant Mortellaro sent repeated text messages and made phone calls at inappropriate hours including 12:29 AM and 12:27 AM over multiple days (July 8–11). This conduct was harassing, excessive, and intended to intimidate Plaintiff into making a payment.

## COUNT VI — VIOLATION OF TEX. FIN. CODE § 392.101

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Tex. Fin. Code § 392.101 states:

**BOND REQUIREMENT.**
**(a) A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section.  A copy of the bond must be filed with the secretary of state.**
**(b)  The bond must be in favor of:**
**(1) any person who is damaged by a violation of this chapter; and**
**(2) this state for the benefit of any person who is damaged by a violation of this chapter.**
**(c) The bond must be in the amount of $10,000.**

76. Defendants Rise Association Management Group, LLC and Rubin & Rolong PLLC engaged in third-party debt collection activities related to a defaulted residential rent debt owed by Plaintiff but failed to obtain and file the $10,000 surety bond required

by Tex. Fin. Code § 392.101(a). As a result, their collection efforts were unlawful under Texas law. Pursuant to Tex. Fin. Code § 392.403(a)(2).

## COUNT VII- VIOLATION OF THE TDCA  Tex. Fin. Code § 392.304 et seq

77. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

78. **Tex. Fin. Code § 392.304(a)(1)(A),(8),(10) & (19) states:**

**FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS**

(a) **Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:**

**(1) using a name other than the:**
**(A) true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection;**
**(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;**
**(10) using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval;**
**(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.**

79. Defendant Leigh Allen, acting as the General Manager of Rise and in active coordination with Defendant Mortellaro, engaged in deceptive and fraudulent collection activity in violation of Tex. Fin. Code § 392.304(a). Specifically:

80. Under § 392.304(a)(1)(A), Allen misrepresented her authority by issuing a 3-day notice to vacate bearing the header "STATE OF TEXAS, COUNTY OF HARRIS," thereby using a name and presentation other than her true business or legal name while collecting a debt, which created the false impression that the document originated from a governmental authority.

81. Under § 392.304(a)(8), Allen misrepresented the character and legal status of the alleged debt by implying that the failure to pay rent had resulted in an official court proceeding or state-sanctioned order, when no such proceeding had occurred at the time of the notice.

82. Under § 392.304(a)(10), Allen distributed a written communication that falsely simulated a document authorized or approved by the State of Texas, creating a misleading impression about its legal effect and source, despite it being a private demand issued by a property manager.

83. Under § 392.304(a)(19), Allen engaged in deceptive practices by falsely implying legal authority, rushing unauthorized entry into Plaintiff's apartment with only 58 minutes' notice, and participating in a coordinated effort to intimidate Plaintiff through misleading communications and physical actions intended to compel payment or vacatur.

## COUNT VIII

## <u>VIOLATION OF Tex. Prop. Code §§ 92.0081</u>

84. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

85. **Tex. Prop. Code Sec. 92.0081(b)(3), (c)(1),(2),(3) and (e-1) states:**

(b) **A landlord may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from:**

(3) **changing the door locks on the door to the tenant's individual unit of a tenant who is delinquent in paying at least part of the rent.**

(c) **If a landlord or a landlord's agent changes the door lock of a tenant who is delinquent in paying rent, the landlord or the landlord's agent must place a written notice on the tenant's front door stating:**
(1) **an on-site location where the tenant may go 24 hours a day to obtain the new key or a telephone number that is answered 24 hours a day that the tenant may call to have a key delivered within two hours after calling the number;**

**(2) the fact that the landlord must provide the new key to the tenant at any hour, regardless of whether or not the tenant pays any of the delinquent rent; and**

**(3) the amount of rent and other charges for which the tenant is delinquent.**

**(e-1) A landlord who changes the locks or otherwise prevents a tenant from entering the tenant's individual rental unit may not change the locks or otherwise prevent a tenant from entering a common area of residential rental property.**

86. On or about July 14, 2025, Defendants unlawfully restricted Plaintiff's access to the leased premises by disabling the electronic key fob necessary to enter the building and access the elevator to his floor. This action was taken without any judicial process, writ of possession, or statutory authority under Tex. Prop. Code § 92.0081.

87. Although the lock on Plaintiff's individual unit door was not changed, Defendants' disabling of Plaintiff's key fob effectively excluded him from the premises by preventing him from entering the secure building entrance and accessing the elevator required to reach his apartment. This exclusion was intentional, and not authorized under any statutory exception, including repair, emergency, or abandonment.

88. As a result, Plaintiff was denied access to his home, personal property, and common areas of the building in direct violation of § 92.0081(e-1), which forbids landlords from locking tenants out of shared or common areas.

89. Defendants' actions were willful and reckless. The lockout caused Plaintiff emotional distress, inconvenience, and a deprivation of basic access to shelter and belongings.

90. Defendants violated multiple provisions of § 92.0081, including subsections (b), (c), (d), (e-1), (f), and (k), and Plaintiff seeks actual damages, statutory civil penalties of one month's rent plus $1,000, court costs, and all other relief available under law.

91. Furthermore, Defendants violated § 92.0081(c) and (f) by failing to post the required 24-hour contact number or on-site location where Plaintiff could retrieve a new key at any time. Defendants' refusal to allow re-entry completely deprived Plaintiff of access to his home and essential belongings.

92. Defendants also breached § 92.0081(e-1) by locking Plaintiff out of shared residential common areas, which is explicitly prohibited, and § 92.0081(k)(1) by initiating the lockout while Plaintiff was still in lawful occupancy of the unit.

93. These actions were not only unauthorized under statute, but intentional and reckless, causing Plaintiff to suffer humiliation, emotional distress, and disruption of essential daily functions. Plaintiff had no access to his property, clothing, or secure space during the unlawful exclusion

94. Pursuant to Texas Property Code § 92.0081(h)-(i), Plaintiff seeks actual damages, statutory civil penalties of one month's rent plus $1,000, court costs, and all other relief to which he is entitled.

## TRIAL BY JURY

95. Plaintiff is entitled to and hereby demands a trial by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendants, jointly and severally, for:

a. Statutory damages under the FDCPA, TDCA, and Tex. Prop. Code § 92.0081;

b. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1), Tex. Fin. Code § 392.403(a)(2), and Tex. Prop. Code § 92.0081(h);

c. Exemplary and punitive damages for Defendants' willful and malicious conduct;

d. Declaratory and injunctive relief;

e. fees, costs, and pre- and post-judgment interest; and

f. All other relief the Court deems just and proper.


Respectfully Submitted,

*/s/Flavio Milam*
Flavio Milam
19307 Water Bridge Dr.
Cypress, Texas 77433
Flavio.00592@gmail.com
(512) 354-9275
Plaintiff *pro se*