United States District Court
Southern District of Texas
**ENTERED**
September 30, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FLAVIO MILAM, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-3904 |
| | § | |
| CHRISTOPHER MORTELLARO, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

**ORDER**

Pending before this Court are Defendants James Rubin ("Rubin") and Rubin & Rolong, PLLC's ("Law Firm") Motion to Dismiss, (Doc. No. 34), and Plaintiff Flavio Milam's ("Milam") Renewed Motion to Substitute Service. (Doc. No. 37). Upon close consideration of the pleadings and relevant legal standards, the Court **GRANTS** Defendants Rubin and the Law Firm's Motion to Dismiss, (Doc. No. 34), and **DENIES** Milam's Renewed Motion to Substitute Service. (Doc. No. 37).

## I. Factual Background

This case arises from alleged debt collection violations. Plaintiff Flavio Milam ("Milam") was a residential tenant in an apartment building located in Houston, Texas. (Doc. No. 6 at 3). In July 2025, Milam began to experience financial hardship and was unable to pay his rent. (*Id.*). On July 3, 2025, his rent became overdue, and his account with the apartment building was placed in default. (*Id.*). While his account was in default, Milam allegedly received a "barrage of late-night and daytime communications designed to pressure and intimidate [him] into making a rent payment" from his landlord, Defendant Christopher Mortellaro ("Mortellaro"). (*Id.*). Milam also alleges that he received a call from "an individual claiming to be Mortellaro's attorney," where the

individual stated, "it can get bad [for you]." (*Id.* at 3–4). Milam alleges that this individual was Defendant James Rubin of Defendant Rubin & Rolong PLLC. (*Id.*). Milam allegedly continued to receive threatening and demanding messages and calls from Mortellaro and his alleged attorney, and Milam alleges that the "frequency, timing, and multi-platform nature of these communications . . . show[ed] a concerted effort to harass, threaten, and coerce payment under the guise of legal enforcement." (*Id.* at 4).

On August 18, 2025, Milam filed his Original Complaint in this Court. (Doc. No. 1). Milam brought causes of action against Defendants Mortellaro, Allen, Rise Management, James Rubin, and Rubin & Rolong PLLC for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), Texas Debt Collection Act ("TDCA"), and the Texas Property Code. Rubin and the Law Firm have moved to dismiss under Federal Rule of Civil Procedure 12(b)(4), 12(b)(5), and 12(b)(6). Also pending before the Court is Milam's Renewed Motion for Alternative Service on Defendant Christopher Mortellaro.

## II. Analysis

### A. Rubin and the Law Firm's Motion to Dismiss

Milam alleges that Rubin and the Law Firm violated the FDCPA, TDCA, Texas Finance Code § 392.101, and the Texas Property Code throughout the eviction process. Rubin and the Law Firm argue both that Milam's claims should be dismissed due to insufficient process and service of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), and that Milam has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) for these causes of action because (1) neither Rubin nor the Law Firm can be considered "debt collectors" under the FDCPA or the TDCA, (2) Milam has not identify any act undertaken by Rubin or the Law Firm that is prohibited

by the FDCPA or the TDCA, and (3) the alleged violations of the Texas Property Code do not implicate Rubin or the Law Firm.

**1. Insufficient process and service of process**

First, Rubin and the Law Firm argue that Milam's attempt to serve them according to this Court's March 31, 2026 order granting Milam's Motion for Substituted Service on Rubin and the Law Firm was defective. That order required Milam to:

> [E]xecute substituted service by May 5, 2026 through posting the required documents to the front door at 25814 Budde Road, Suite B-307, Spring, Texas 77380 and at the residence of its registered agent for service of process, at the residence of James Rubin, at 2019 Washington Avenue, Suite 202, Houston, Texas 77007, and by emailing the required documents and a copy of this order to rubinrolong@rrlawtx.com.

(Doc. No. 29). It appears that Milam's certified process server attempted service on May 6, 2026, by:

(1) Posting the required documents to a door on the third floor at 25814 Budde Road. The door, according to Rubin's affidavit, is 'controlled access' and can only be opened by tenants with office space within the door. Rubin's office (suite B-307) is located within this locked door;

(2) Posting the required documents at 2019 Washington Avenue, Suite 202; and

(3) Emailing the required documents and a copy of this order to rubinrolong@rrlawtx.com.

These facts are supported by the process server's affidavit and by Rubin's affidavit. (Doc. Nos. 32, 34–1). This service substantially complied with this Court's order permitting substituted service. Defendants' motion to dismiss for insufficient process and insufficient service of process is denied.

**2. Failure to state a claim**

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

First, the Court addresses whether Rubin and the Law Firm fall under the statutory definitions of "debt collectors" under the FDCPA and the TDCA. To state a claim under both the FDCPA and the TDCA, the plaintiff must sufficiently allege that the defendant is a "debt collector" as defined by the statute. *Akintunji v. Chase Home Finance, L.L.C.*, No. H-11-389, 2011 WL 2470709, at *2 (S.D. Tex. June 20, 2011); *Cash v. HSBC Bank USA, N.A.*, No. 4:21-CV-3404, 2024 WL 3378421, at *8 (S.D. Tex. July 11, 2024). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed to due another." 15 U.S.C. § 1692a. "Attorneys qualify as debt collectors for purposes of the FDCPA when they regularly engage in

consumer debt collection, including but not limited to litigation on behalf of a creditor client." *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 330 (5th Cir. 2017).

The Complaint alleges that Rubin and the Law Firm are both considered debt collectors under the FDCPA and the TDCA because they "regularly engage in the collection of consumer debts . . . . In connection with such collection activities, Defendants issue demand letters, place collection phone calls, and initiate legal proceedings." (Doc. No. 6 at 7). The factual allegations that Rubin and the Law Firm regularly issue demand letters, place collection phone calls, and initiate legal proceedings are sufficient, at the pleading stage, to allow the Court to draw the reasonable inference that Rubin and the Law Firm are debt collectors within the meaning of the FDCPA and TDCA.

Second, Rubin and the Law Firm argue that Milam has not alleged facts sufficient to support a plausible claim for relief under the substantive provisions of the FDCPA or the TCPA. Milam alleges that he received a phone call from an individual identifying himself only as Mortellaro's attorney, who then allegedly stated that "it can get bad." Based on this phone call, Milam alleges that Rubin and the Law Firm violated 15 U.S.C. § 1692d (harassment or abuse), § 1692e(5) (threatening action without lawful authority), and § 1692g(a) (failing to provide written notice of debt within five days).[1] (Doc. No. 6 at 4).

This single phone call alone is not sufficient to support a plausible claim for relief under any of the complained-of provisions of the FDCPA. As to the § 1692d claim—which Milam specifies in his response is a claim that Rubin placed a telephone call without meaningful

[1] Milam's response (Doc. No. 35) additionally argues that Milam has stated a claim for violations of 15 U.S.C. § 1692f. However, no factual allegation in the complaint ties Rubin and the Law Firm's conduct to any violation of § 1692f. To the extent the complaint includes an allegation that Rubin and the Law Firm violated § 1692f, that claim is dismissed with prejudice.

disclosure of the caller's identity—the factual allegations in the complaint state that the caller identified themselves as Mortellaro's attorney. This was meaningful disclosure under 15 U.S.C. § 1692d(6). As to the other two claims, the factual allegations in the complaint do not rise to the level of a plausible showing that Rubin or the Law Firm threatened to take any action without lawful authority or that the phone call constituted an "initial communication" within the meaning of § 1692g. According to the complaint, Rubin and the Law Firm placed one call and conveyed no information about any debt or any intention to take any action. Milam's claims under the FDCPA and TDCA are dismissed with prejudice.

Third, Milam alleges that Rubin and the Law Firm violated Texas Property Code § 92.0081 when "Defendants unlawfully restricted Plaintiff's access to the leased premises by disabling the electronic key fob necessary to enter the building and access the elevator to his floor." (Doc. No. 7 at 16). Section 92.0081(b) states that "[a] landlord may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from . . . changing the door locks on the door to the tenant's individual unit of a tenant who is delinquent in paying at least part of the rent."

The complaint contains no factual allegations tying Rubin and the Law Firm's conduct to any of the conduct complained of as violating § 92.0081 (such as disabling Milam's key fob). Additionally, the complaint does not allege that Rubin or the Law Firm are a "landlord" within the meaning of § 92.0081. Milam's claim against Rubin and the Law Firm for violation of the Texas Property Code is dismissed with prejudice.

**B. Milam's Motion for Substituted Service on Mortellaro**

Milam requests that this Court approve substituted service on Defendant Christopher Mortellaro. Milam represents that he has made diligent attempts to serve Defendant Mortellaro in

Spain under the Hague Service Convention but, due to Milam's inability to find an address for Mortellaro in Spain, those attempts have been unsuccessful.

The Supreme Court has held that: "compliance with the [Hague Service Convention] is mandatory in all cases to which is applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Federal Circuit has since held that the Hague Service Convention does not displace or subsume a federal court's discretion under Federal Rule of Civil Procedure 4(f)(3) to authorize alternative service. *In re OnePlus Technology (Shenzhen) Co., Ltd.*, 2021 WL 4130643 at *3 (Fed. Cir.). Courts in this Circuit have applied this rule. *WSOU Investments LLC v. Oneplus Technology (Shenzhen) Co. Ltd.*, 2022 WL 4126007, *5 (W.D. Tex.). *Aprese Sys. Texas, LLC v. Audi AG*, 2022 WL 891951, at *2 (W.D. Tex.).

When applying this rule, courts look to "whether there has been a showing that the plaintiff has reasonably attempted to effectuate service on the defendant by conventional means." *OnePlus*, 2021 WL 4130643, at *3. There has been no such showing here. The bald assertion that Milam has been unable to find an address for Mortellaro in Spain, without any showing of what steps Milam has taken to find that address, is insufficient. For these reasons, Milam's Motion for Substituted Service on Mortellaro (Doc. No. 37) is **DENIED**. The Court does once again grant leave for Milam to effectuate service on Mortellaro in accordance with the Hague Service Convention by October 30, 2026, or else provide the Court with evidence of diligent efforts to effect service.

## III. Conclusion

For the above reasons, the Court hereby **GRANTS** Defendants Rubin and the Law Firm's Motion to Dismiss. All of Milam's claims against Rubin and the Law Firm are dismissed with prejudice. The Court also **DENIES** Milam's Motion for Substituted Service on Mortellaro. Nevertheless, the Court once again grants leave for Milam to effectuate service on Mortellaro in accordance with the Hague Service Convention if that process is initiated by October 30, 2026, or else provide the Court with evidence of diligent efforts to effect service.

It is so ordered.

Signed on this the 30th day of September 2026.

Andrew S. Hanen
United States District Judge